## PAXTON, RECEIVER, v. THE VINCENNES MANU-
## FACTURING COMPANY.

[No. 2,357. Filed May 25, 1898.]

PLEADING.—*Answer.— Cross-Complaint.— Bills and Notes.*— The receiver of a bank sued a manufacturing company for balance due on a promissory note. Defendant by way of answer and by cross-complaint set up an agreement entered into by it and the president and cashier of the bank, by the terms of which defendant assigned to such president and cashier certain mill machinery and stock as collateral security for a debt owing by defendant to said president and cashier, and also to the bank, wherein it was agreed that the stock should be sold, and the proceeds, after paying the operating expenses of the mill, be applied to the payment of the debts so secured, and the surplus returned to defendant, and alleged that the money received from such sale was in excess of the debts secured, and that the surplus was not returned to defendant, asking that the amount collected from such sale be first set off against the demand, and demanding judgment for the surplus. *Held,* that defendant's demand set forth in the answer and the cross-complaint was within the definition of a set-off as provided by section 351, Burns' R. S. 1894. *pp. 253-259.*

PLEA IN ABATEMENT.—*Pendency of Prior Action.*—A prior action pleaded by way of abatement must be between the same parties or their privies, and for the same cause of action. *pp. 259, 260.*

SPECIAL VERDICT.—*Elimination of Improper Matter.*—Where a special verdict after the elimination of improper matter consisting of conclusions of law and evidentiary facts contains enough facts to support a judgment within the issues, it will be held sufficient. *pp. 261, 262.*

From the Sullivan Circuit Court. *Affirmed.*

*W. H. DeWolf,* for appellant.

*J. S. Bays* and *Cullop & Kessinger,* for appellee.

BLACK, J.—The appellant, Thomas R. Paxton, receiver of the Vincennes National Bank, brought his action against the appellee in the Knox Circuit Court, upon a promissory note made by the appellee to said bank, dated May 23, 1885, upon which as shown by the complaint fifteen hundred dollars had been paid. Before the issues were fully formed the venue was

changed to the court below.   There was an answer in two paragraphs, the first being a plea of payment. In the second paragraph, purporting to be a counter-claim, a demurrer to which was overruled in the court below, the appellee admitted its execution of the note in suit, and alleged, in substance, that subsequent to the execution thereof, for the purpose of securing it and a number of other notes which the appellee had executed to the bank, and which had been indorsed to one Wilson M. Tyler, who was the president of the bank, and Hiram A. Foulks, cashier thereof, the appellee executed to said Tyler and Foulks, a mortgage on a large amount of property, personal and real, which the appellee then owned; that on the 5th day of July, 1885, subsequent to the execution of said mortgage, the plant of the appellee was burned and so damaged that the appellee could not longer carry on its business; that it then had a large stock and carried a large amount of insurance on its plant; that on the 8th of July, 1885, the appellee and said Tyler and Foulks, president and cashier of said bank, for the purpose of repaying the indebtedness which the appellee then owed said bank, entered into a contract as follows:   "Whereas, Wilson M. Tyler and Hiram A. Foulks hold a mortgage on certain personal property described as logs, lumber, heading, staves, and material of every kind, engines, boilers, mills, machinery, tools, buildings, sheds and other personal property of every kind, owned and used by the Vincennes Manufacturing Company, and kept and situated upon the premises occupied and used by the said manufacturing company, to said Tyler and Foulks, to indemnify them as indorsers for said company; and as whereas, said company has failed to pay certain notes indorsed by said Tyler and Foulks, now past due, and which said Tyler and Foulks have paid, and

are liable to pay for said company, the said manufac-
turing company, hereby transfer, set over, and deliver,
now into the possession of the said Tyler and Foulks
all said property, of every description as such mort-
gagees, and by witness of the terms of said mortgage,
to be by them disposed of as provided in said mort-
gage; and the proceeds of sales of such mortgaged
property shall be applied in payment of operating ex-
penses now due, and that may accrue, as provided in
said mortgage, in manufacturing and putting into
shape for sale all material, machinery and other prop-
erty as above described, to the expenses of selling and
disposing of the same, and the balance of its proceeds
to be applied in payment of said mortgage and a cer-
tain other mortgage executed by said manufacturing
company to the Vincennes National Bank, so far as
said indebtedness now exists or may remain after col-
lecting all insurance money due to said manufactur-
ing company by reason of its recent fire; and after the
payment of all said sums, whatever money or property
shall remain shall be returned to said Vincennes Man-
ufacturing Company. It is hereby further understood
that should said Tyler and Foulks fail to apply said
proceeds of sale as above stipulated, they shall then
be jointly and severally liable to said Vincennes Man-
ufacturing Company and to each individual stock-
holder thereof for damages for such failure." There
were some other provisions not here material. The
agreement was signed by the appellee and by Tyler
and Foulks.

It was further alleged in the second paragraph of
answer, that said contract had been in full force and
effect since the date of its execution; that the appellee
in all respects kept and performed all the conditions of
said contract on its part; that said Tyler, the president
of said bank, collected and took charge, for the pay-

ment of said indebtedness, of property for which he never accounted to the appellee, but which he applied, as the appellee believed, upon said indebtedness.    The answer set forth a list of this property, amounting to $27,600.00.    It was alleged that said Tyler, as president of said bank, received said sum of money which he realized from the sale of said articles, for the purpose of discharging said indebtedness, and that the same "was fully discharged and paid upon the whole of said indebtedness;" that the amount of said indebtedness of the appellee to said bank at said time, including the demand sued upon in appellant's complaint, was not more than $16,000.00; that the proceeds realized from the sale of said articles "were under the control, management and direction of the plaintiff, and was by it used in its general banking business, and that it is indebted to the defendant for the overplus upon the sale of said articles in the sum of $11,600.00, with interest thereon from the 1st day of January, 1886, up to the present time; that all of the indebtedness which the defendant owed to the plaintiff was fully paid and satisfied out of the sale of the above and foregoing articles, and there was a surplus over and above the discharging of said indebtedness to the plaintiff in its hands of $11,600.00, with the interest thereon, which it justly owes the defendant and has refused to pay over, and account to the defendant for said sum or any part thereof; that the defendant often demanded of the plaintiff an accounting and settlement of said money, the overplus remaining in the hands of said plaintiff, which it realized from the sale of the above and foregoing articles at the prices stated herein; that it wholly failed and refused at any and all times to settle with the defendant or to account to it for said overplus or any part thereof.    The defendant offers to set off against said

Paxton, Receiver, *v*. The Vincennes Manufacturing Company.

plaintiff's claim any amount which may be found to be due from it to the plaintiff, and asks judgment against the plaintiff for the residue thereon remaining in its hands. Wherefore defendant demands judgment in the sum of twelve thousand dollars and all proper relief in the premises."

The appellee also filed a pleading denominated therein a cross-complaint, which counsel for appellant in argument say is in all respects the same as the second paragraph of answer, while counsel for appellee say that these pleadings are the same except that they are differently named. A demurrer to the cross-complaint was overruled. The objection urged by counsel to this pleading, thus unnecessarily duplicated, is that if it shows a cause of action it is one not against the bank or its receiver, but against Tyler and Foulks. The facts are not stated with desirable clearness.

It is alleged that a mortgage was given by the appellee to Tyler, the president of the bank, and Foulks, its cashier, for the purpose of securing the note in suit and other indebtedness of the appellee to the bank. It is alleged that the agreement set out in the pleading was entered into for the purpose of repaying the indebtedness of the appellee to the bank. The agreement by its terms provided that the mortgaged property should be disposed of by Tyler and Foulks, that the proceeds should be applied in payment of operating expenses and the expenses of disposing of the property, and that the balance of the proceeds should be applied in payment of a mortgage held by Tyler and Foulks to indemnify them as indorsers for the appellee and in payment of a certain other mortgage executed by the appellee to the bank, so far as said indebtedness might remain after collecting insurance money due to the company. The agreement provided

Vol. 20—17

for the return of the surplus to the appellee, and provided for the liability of Tyler and Foulks for failure to apply the proceeds as stipulated. It is further shown that Tyler, as president of the bank, received the money which he had realized from the sale of the property for the purpose of discharging said indebtedness, and that it was so applied; that this indebtedness, including the demand upon the note in suit, was not more than a certain amount, much less than the amount stated as the sum so realized by the sale of the property. It is alleged in effect, that the proceeds of the sale were received by the bank and used in its banking business; that all the indebtedness of the appellee to the bank was thus paid, and that a surplus in a specified amount remained in the possession of the bank, which it refused upon demand, to pay to the appellee.

It appears from the pleading that the bank retained and used a certain sum, being the surplus of money received by its president, acting as such, which he had realized from sales of property of the appellee turned over to the president and cashier for the purpose of paying the indebtedness of appellee. It may be gathered from the pleading that the president of the bank placed the entire proceeds of the property in the bank where it was used as the money of the bank, and did not return any part of it to the appellee. If the president and cashier were personally liable to the appellee, which we need not decide, still it appears that the bank by its own officers, acting as such, having appropriated and retained a larger amount than was necessary to discharge the appellee's indebtedness, was liable to him for the surplus so retained. The appellee's demand set forth in the second paragraph of answer and in the cross-complaint was within the definition of a set-off in the statute which pro-

vides, section 351, Burns' R. S. 1894 (348, Horner's R. S. 1897): "A set-off shall be allowed only in actions for money demands upon contract, and must consist of matter arising out of debt, duty, or contract, liquidated or not, held by the defendant at the time the suit was commenced, and matured at or before the time it is offered as a set-off."

The court sustained a demurrer to a plea in abatement directed to the cross-complaint, in which the appellant alleged the death of said Wilson M. Tyler, and the appointment of an administrator of his estate, and showed that before the commencement of this action the appellee filed a claim against said estate for the same cause of action as that set forth in the appellee's cross-complaint, which claim was still pending in the Knox Circuit Court. It was also alleged in substance, in this plea, that on, etc., the Vincennes National Bank was declared insolvent by the comptroller of the currency; that the appellant was by said comptroller duly appointed receiver, etc.; and that under the instructions of the comptroller the appellant gave notice by publication, of his appointment, notifying and requiring all persons having claims against said bank to make a written statement thereof, verified by oath, and to file the same with said receiver within ninety days from the publication of the notice; and that no claim had been so filed by or for the appellee; that prior to the filing of the cross-complaint the appellant had no notice that the appellee claimed that said bank was indebted to it; that for more than six months the appellant had kept an office at Vincennes, and had been present there attending to the business of said receivership, and that a person named who claimed to have an interest in said company, and had been acting in its behalf in the filing of said claim, had knowledge of the appointment of the receiver and of

his presence in Vincennes in the discharge of his duties.

The pendency of a prior action is not ground for abatement, if not between the same parties as those involved in the case wherein it is pleaded, or their privies, as well as for the same cause of action as that set up therein. *Dawson* v *Vaughan*, 42 Ind. 395; *Bryan* v. *Scholl*, 109 Ind. 367; *American White Bronze Co.* v. *Clark*, 123 Ind. 230; *Needham* v. *Wright*, 140 Ind. 190. If the claim alleged to be pending against the decedent's estate can be said to involve the same cause of action as that presented by the second paragraph of answer and the cross-complaint, the prior proceeding was not between the parties here contending.

Concerning the other branch of the plea in abatement, counsel for appellant are of the opinion that the claim against the bank should have been filed with the receiver pursuant to the notice given by him; but they do not state any reason why the appellee, having failed so to present the claim, may not set it up in the action brought by the receiver for the purpose of collecting supposed assets of the bank. The receiver chose a tribunal in which to litigate a claim of the bank against the company, which could not be properly adjusted without the determination along with it of the cross-claim of the company against the bank, which if allowed, would extinguish the appellant's claim and prevent a recovery thereon, while at the same time the question as to the additional amount of indebtedness of the bank to the appellee could be adjudicated in the receiver's chosen tribunal. We think the court did not err in sustaining the demurrer to this plea in abatement to the cross-complaint, or in sustaining the demurrer to a like plea to the second paragraph of answer.

The court also sustained a demurrer to the second,

third and fifth paragraphs of answer to the cross-complaint. In the second paragraph the appellant relied upon the statute of limitations, as a defense to the entire cause of action stated in the cross-complaint, alleging that the cause of action set forth in the cross-complaint did not accrue within six years next before the commencement of this action. It is conceded by the appellant, that if the appellee's pleading should be regarded as a set-off, the statute of limitations would not defeat it, and the court's rulings would be correct. We have seen that the pleading, considered in its real character, without regard to the name given it by the pleader, is an answer of set-off. See section 370, Burns' R. S. 1894 (367, Horner's R. S. 1897). *Rennick* v. *Chandler,* 59 Ind. 354; *Armstrong* v. *Caesar,* 72 Ind. 280; *Warring* v. *Hill,* 89 Ind. 497; *Huffman* v. *Wyrick,* 5 Ind. App. 183. The third paragraph of answer to the cross-complaint alleged that the court below had no jurisdiction of the cause of action therein set forth, and stated the appointment of the appellant as receiver. In the fifth paragraph the filing of appellee's claim against the estate of said Tyler, deceased, was alleged. We are unable to see any error in the action of the court in sustaining the demurrers to these paragraphs. They showed no facts which could bar the appellee's set-off.

The cause was tried by jury, and a special verdict was rendered. The appellant's motion for a *venire de novo* was overruled. The verdict was in the form of interrogatories and answers thereto.

If conclusions of law or evidentiary facts be set forth in a special verdict, it will be a sufficient verdict, if, when such improper matter is eliminated, it contains enough facts to support a judgment within the issues. *Louisville, etc., R. W. Co.* v. *Berkey,* 136 Ind. 181; *Terre Haute, etc., R. R. Co.* v. *Brunker,* 128

Ind. 542; *Branson* v. *Studabaker*, 133 Ind. 147; *Woodward* v. *Davis*, 127 Ind. 172; *Evansville, etc., R. R. Co.* v. *Taft*, 2 Ind. App. 237. The special verdict before us is in many respects unsatisfactory. It is not a straightforward and clear statement of the facts under the issues. Some of the computations are not harmonious, but the amounts upon which the computations are based being given, it is possible, by rejecting the erroneous computations and retaining the correct ones to understand the real meaning of the jury and to harmonize the verdict in this regard. There is in the verdict some reference to the evidence, without showing the fact established by it; but when this part of the verdict is ignored there are still left enough facts upon which to base a judgment. Appellant criticizes the verdict as not assessing his damages. It does show the amount of the note in suit, including principal, interest and attorney's fee. A greater amount was found due the appellee, and the verdict cannot be pronounced insufficient because it did not formally state that the appellant was damaged in the sum so found to be the amount of the note.

Upon a careful examination, which the involved character of the verdict has rendered necessary, we think that, considering it as a whole, in connection with the issues made by the pleadings, the verdict was not so defective that a judgment could not be rendered upon it. The judgment rendered for the appellee was for $2,056.00, a smaller amount than the balance to which the appellee appears from the verdict to be entitled. This does not go to the question of the sufficiency of the verdict upon a motion for a *venire de novo*.

The appellant's motion for a new trial was overruled. In argument upon the causes assigned in this motion counsel have made but few references to the

places in the record where the matters may be found to which the discussions relate. In the matters pointed out we have not discovered any reversible error. The judgment is affirmed.