THE ATTORNEY GENERAL HAS ASKED ME TO RESPOND TO YOUR QUESTIONS IN THE ABOVE-REFERENCED MATTER. AS YOU WILL RECALL, YOUR REQUEST AROSE PRIMARILY OUT OF CONCERNS THAT CERTAIN LEGISLATION, SPECIFICALLY HOUSE BILL 1017 (1989 OKLA. SESS. LAWS, 1ST EX. SESS., C. 2) (HEREAFTER "H.B. 1017"), WOULD BE REPEALED AND WHAT THE REPERCUSSIONS WOULD BE ON TEACHER CONTRACTS AND THE SALARYLEVELS CONTAINED THEREIN THAT WERE RELIANT ON THE NON-REPEAL OF H.B. 1017. THESE CONCERNS WERE FOCUSED IN YOUR REQUEST UPON THE PROVISIONS OF SECTION 79 OF HOUSE BILL NO. 1236 (1991 OKLA. SESS. LAWS, C. 280, 79) (HEREAFTER "SECTION 79").
IN SECTION 79, THE LEGISLATURE MANDATED THAT "THE SALARY LEVEL OF CERTIFIED INSTRUCTIONAL STAFF EMPLOYED IN THE SAME SCHOOL DISTRICT IN THE 1990-91 SCHOOL YEAR SHALL NOT BE REDUCED FOR THE 1991-92 SCHOOL YEAR UNLESS THE HOURS OR THE DUTIES . . . ARE REDUCED PROPORTIONATELY." AS YOU INDICATED IN YOUR REQUEST, SECTION 79 WAS OF SPECIAL CONCERN WHEN ONE CONSIDERED THAT CERTAIN SCHOOL DISTRICTS HAD INSERTED "CONTINGENCY CLAUSES" IN THEIR 1990-91 TEACHER CONTRACTS AND PLANNED TO DO THE SAME FOR 1991-92 TEACHER CONTRACTS. AN EXAMPLE OF SUCH A CONTINGENCY CLAUSE READS, IN PART, AS FOLLOWS:
 "THIS 1990-91 SALARY SCHEDULE IS BASED UPON THE LAW AS IT NOW EXISTS AND BASED UPON THE CONDITION THAT HOUSE BILL 1017 IS NOT REPEALED . . . PROVIDED THAT IF HOUSE BILL 1017 IS REPEALED . . . THE SALARY SCHEDULE WILL REVERT BACK TO THE 1989-90 SALARY LEVEL . . . ON THE NEXT MONTH FOLLOWING THE DATE HOUSE BILL 1017 IS REPEALED . . . SAID CHANGE OF THE SALARY SCHEDULE SHALL REQUIRE NO FURTHER ACTION BY THE BOARD OF EDUCATION.."
OBVIOUSLY, SUCH A CONTINGENCY CLAUSE CONDITIONS TEACHER SALARY LEVELS ON THE NON-REPEAL OF H.B. 1017. ALSO, SUCH CLAUSES CLEARLY CONTRADICT THE MANDATES OF SECTION 79. WITH THE FOREGOING PROVIDING THE LEGAL BACKDROP, I UNDERSTOOD YOUR REQUEST TO POSE THREE SEPARATE QUESTIONS: (1) WOULD THE TERMS OF SECTION 79 PRECLUDE SCHOOL DISTRICTS FROM REDUCING SALARIES PAID PURSUANT TO CONTRACTS CONTAINING THE CONTINGENCY CLAUSE IF H.B. 1017 WAS REPEALED; (2) IF SECTION 79 DID APPLY TO SUCH CONTRACTS, WOULD SUCH AN APPLICATION BE A VIOLATION OF ARTICLE II, SECTION 15 OF THE OKLAHOMA CONSTITUTION; AND (3) IS SECTION 79 OTHERWISE CONSTITUTIONAL?
YOU WILL RECALL THAT SHORTLY AFTER YOUR REQUEST WAS RECEIVED BY THE ATTORNEY GENERAL AND SHE DIRECTED ME TO RESPOND TO IT, WE HAD A SERIES OF TELEPHONE CONVERSATIONS WHEREIN WE DISCUSSED THE NATURE OF YOUR REQUEST. AS A RESULT OF MY CONVERSATIONS WITH YOU, IT WAS AGREED THAT A RESPONSE TO YOUR REQUEST WOULD BE LIMITED TO CONTRACTS EXECUTED SUBSEQUENT TO THE EFFECTIVE DATE OF SECTION 79, WHICH WOULD HAVE BEEN NO LATER THAN JULY 1, 1991, SEE, 1991 OKLA. SESS. LAWS, C. 280, 88 AND 89.
THAT BEING SO, THE RESPONSE FROM THIS OFFICE WOULD NOT INCLUDE THE IMPACT OF THE LANGUAGE FOUND IN SECTION 79 ON CONTRACTS WHICH HAD BEEN COMPLETED AND FULLY EXECUTED PRIOR TO SECTION 79 BECOMING LAW. YOUR INQUIRY WAS THUSLY FOCUSED MORE DIRECTLY ON THE LEGALITY OF INCLUDING CONTINGENCY CLAUSES SUCH AS THE ONE REFERENCED ABOVE IN TEACHER CONTRACTS WHICH WERE EXECUTED AFTER THE MINIMUM SALARY LEVEL MANDATES OF SECTION 79 WERE THE LAW IN OKLAHOMA.
IN THIS REGARD, AS YOU ARE AWARE, SINCE THE LAST TIME WE SPOKE AND WHILE YOUR REQUEST HAS STILL BEEN PENDING, THE VOTERS IN OKLAHOMA HAVE VOTED NOT TO REPEAL H.B. 1017 BY TURNING DOWN STATE QUESTION 639 ON OCTOBER 15, 1991. AS A RESULT, YOUR QUESTIONS CONCERNING THE LEGALITY OF THE CONTINGENCY CLAUSE IN LIGHT OF THE LANGUAGE OF SECTION 79 ARE MOOT, GIVEN THE FACT THAT THE EVENT THAT WOULD HAVE TRIGGERED THE CONTINGENCY, THE REPEAL OF H.B. 1017, DID NOT OCCUR. ALSO, SINCE YOUR QUESTIONS ARE CONCERNED WITH THE MINIMUM SALARY LEVEL MANDATES OF SECTION 79, ONLY AS APPLIED TO TEACHER CONTRACTS THAT WERE EXECUTED AFTER SECTION 79 BECAME LAW, THE PROHIBITIONS AGAINST IMPAIRMENT OF CONTRACT FOUND IN ARTICLE II, SECTION 15 OF THE OKLAHOMA CONSTITUTION DO NOT COME INTO PLAY.
ARTICLE II, SECTION 15 OF THE OKLAHOMA CONSTITUTION PROVIDES, IN PART, THAT "NO . . . LAW IMPAIRING THE OBLIGATION OF CONTRACTS, SHALL EVER BE PASSED. N THE OKLAHOMA SUPREME COURT HAS HELD THAT THIS CONSTITUTIONAL INHIBITION IS APPLICABLE TO CONTRACTS OF THE STATE AS FULLY AS TO THOSE BETWEEN INDIVIDUALS. FORTINBERRY CO. V. BLUNDELL, 242 P.2D 427 (OKLA. 1952). HOWEVER, THE COURT HAS ALSO HELD THAT THE CONSTITUTIONAL GUARANTY AGAINST IMPAIRMENT OF CONTRACTS ONLY APPLIES TO CONTRACTS WHICH ARE COMPLETE AND CLEARLY PROVED. PUBLIC SERVICE CO. OF OKL. V. CADDO ELEC. COOP., 479 P.2D 572 (OKLA. 1970). FOR EXAMPLE, ANY STATUTE WHICH EITHER DIRECTLY OR INDIRECTLY PREVENTS THE COLLECTION OF INTEREST ACCORDING TO THE TERMS OF THE ORIGINAL OBLIGATION WOULD IMPAIR THE OBLIGATION OF CONTRACT AND WOULD THEREFORE BE UNCONSTITUTIONAL. SECURITY BANK TRUST CO. V. BARNETT, 36 P.2D 874 (OKLA. 1934). SIMILARLY, A STATUTE THAT PROVIDED THAT PRIOR CONTRACTS SHALL BE CONSIDERED AS NULLITIES WOULD BE INVALID AS VIOLATIVE OF ARTICLE II, SECTION 15. APPLICATION OF OKLAHOMA TURNPIKE AUTHORITY, 348 P.2D 510 (OKLA. 1960).
YOUR QUESTION HAS BEEN LIMITED TO THE IMPACT OF SECTION 79 ON FUTURE CONTRACTS BETWEEN SCHOOL DISTRICTS AND TEACHERS, CONTRACTS WHICH ARE NEITHER COMPLETE NOR FULLY EXECUTED. MOST IMPORTANTLY, CONTRACTS WHICH WOULD NOT BE COMPLETE UNTIL AFTER SECTION 79'S MANDATES WERE THE LAW OF THE LAND. THEREFORE, THE CONSTITUTIONAL PROVISION PROHIBITING THE PASSAGE OF ANY LAW IMPAIRING THE OBLIGATION OF CONTRACTS WOULD NOT BE APPLICABLE TO YOUR QUESTION BECAUSE THE STATUTE ALLEGED TO VIOLATE THE PROVISION WOULD NOT BE OPERATING ON CONTRACTS IN EXISTENCE PRIOR TO ITS PASSAGE. IN SHORT, THE OBLIGATIONS OF A CONTRACT ARE NOT UNCONSTITUTIONALLY IMPAIRED WHERE SUCH STATUTES OPERATE PROSPECTIVELY ONLY. THERE SIMPLY CAN BE NO IMPAIRMENT OF A CONTRACT WHEN THE STATUTE IS IN EXISTENCE AT THE TIME THE CONTRACT IS EXECUTED. LAYTON V. PAN AMERICAN PETROLEUM CORP., 383 P.2D 624 (OKLA. 1963).
HOWEVER, SUCH A CONCLUSION SHOULD NOT BE INFERRED TO MEAN THAT HAD YOUR QUESTION INVOLVED A RETROACTIVE APPLICATION OF SECTION 79 TO CONTRACTS WITH CONTINGENCY CLAUSES EXISTING PRIOR TO ITS PASSAGE THAT IT WOULD BE INVALID AS A VIOLATION OF ARTICLE II, 15. IN FACT, IT MAY BE STATED VERY BROADLY THAT THE OBLIGATIONS OF A CONTRACT ARE NOT UNCONSTITUTIONALLY IMPAIRED BY THE SUBSEQUENT ENACTMENT OF STATUTES RELATING TO SUCH MATTERS AS SALARIES. 16A AM. JUR. 2D CONSTITUTIONAL LAW 712 (1979).
THE FOREGOING DISCUSSION DOES NOT OBVIATE THE NEED FOR FURTHER RESPONSE TO YOUR REQUEST, HOWEVER. THIS IS BECAUSE, DURING OUR TELEPHONE CONVERSATIONS, YOU RELATED TO ME THE PRIMARY IMPETUS FOR YOUR ORIGINAL REQUEST, I.E., THE LEGAL QUESTION OF WHETHER THE LEGISLATURE HAD THE POWER TO MANDATE, EVEN PROSPECTIVELY, TO LOCAL SCHOOL DISTRICTS CERTAIN TERMS AND CONDITIONS SUCH AS SALARY LEVELS IN THE DISTRICTS' CONTRACTS WITH THEIR SCHOOL TEACHERS. IN THIS REGARD, IT APPEARS THAT AFTER A REVIEW OF THE CLEARLY APPLICABLE LAW IN THAT AREA, THE ISSUANCE OF A FORMAL OPINION IS UNNECESSARY. IN PROVIDING AN INFORMAL OPINION WHICH WILL HOPEFULLY BE OF SOME ASSISTANCE TO YOU, I WILL DISCUSS PRIMARILY THE EXTENT OF LEGISLATIVE AUTHORITY OVER TERMS AND CONDITIONS OF CONTRACTS BETWEEN SCHOOL DISTRICTS AND SCHOOL TEACHERS.
LEGISLATIVE POWER AS TO TERMS AND CONDITIONS OF CONTRACTS BETWEEN SCHOOL DISTRICTS AND SCHOOL TEACHERS
A MEANINGFUL ANSWER TO YOUR QUESTION MUST BEGIN WITH A BRIEF OVERVIEW OF THE LAW PERTAINING TO CONTRACTING IN THE PUBLIC SCHOOL CONTEXT. PUBLIC EDUCATION IS A FUNCTION OF THE STATE. TRYON DEPENDENT S.D. NO. 125 OF LINCOLN CITY. V. CARRIER, 474 P.2D 131 (OKLA. 1970). THE LEGISLATURE IS CHARGED WITH ESTABLISHING AND MAINTAINING A SYSTEM OF PUBLIC EDUCATION. OKLA. CONST. ARTICLE XIII, SECTION 1. IN THE EXERCISE OF THIS GOVERNMENTAL FUNCTION, THE LEGISLATURE IS VESTED WITH PLENARY POWER TO CREATE, ABOLISH, OR CHANGE SCHOOL DISTRICTS. IN RE WICKSTRUM, 454 P.2D 660 (OKLA. 1969); HATFIELD V. JIMERSON, 365 P.2D 980 (OKLA. 1961).
SCHOOLS FURNISHING COMMON EDUCATION IN OKLAHOMA ARE GOVERNED BY A BOARD OF EDUCATION IN EACH SCHOOL DISTRICT. 70 O.S. 5-106. SEE ALSO A.G. OPINION NO. 80-236. SUCH SCHOOL BOARDS CAN EXERCISE ONLY THOSE POWERS THAT ARE GRANTED IN EXPRESS WORDS, THOSE FAIRLY IMPLIED IN OR NECESSARILY INCIDENTAL TO THE POWERS EXPRESSLY GRANTED. BOARD OF EDUCATION OF OKLAHOMA CITY V. CLOUDMAN, 92 P.2D 837 (OKLA. 1939); INDEPENDENT SCH. DIST. NO. 8 OF SEILINA V. SWANSON, 553 P.2D 496 (OKLA. 1976). SEE ALSO A.G. OPIN. NOS. 88-043 AND 80-236.
IN THIS REGARD, A SCHOOL BOARD IS EXPRESSLY AUTHORIZED TO "CONTRACT WITH AND FIX THE DUTIES AND COMPENSATION" OF A VARIETY OF EMPLOYEES, INCLUDING SCHOOLTEACHERS. 70 O.S. 5-117(A)(14). THE OKLAHOMA SUPREME COURT HAS AGREED THAT THE "NEEDS FOR TEACHERS' SALARIES ARE MATTERS WITH THE SCHOOL BOARD." PROTEST OF ST. LOUIS — SAN FRANCISCO RY. CO., 78 P.2D 806, 807 (OKLA. 1938). SUCH COMPENSATION IS, OF COURSE, SUBJECT TO THE FISCAL CONSTRAINTS ON THE DISTRICT, INCLUDING THE DEBT LIMITATIONS IMPOSED BY THE OKLAHOMA CONSTITUTION. SEE, E.G., OKLA. CONST. ARTICLE X, SECTION 26.
NOTWITHSTANDING A SCHOOL DISTRICT'S STATUTORY AUTHORITY TO CONTRACT WITH AND FIX THE SALARIES OF ITS TEACHERS, IT HAS STILL GENERALLY BEEN HELD THAT THE LEGISLATURE HAS THE POWER TO PRESCRIBE THE TERMS OF A TEACHER'S EMPLOYMENT CONTRACT EXECUTED BY A LOCAL SCHOOL BOARD WHICH IS THE STATE'S AGENT IN THE ADMINISTRATION OF PUBLIC SCHOOLS. KOSTANZER V. STATE, 187 N.E. 337 (IND. 1933). IN OKLAHOMA, OUR SUPREME COURT HAS SPECIFICALLY RULED THAT CONTRACTS FOR EMPLOYMENT MADE BY A SCHOOL DISTRICT WITH ITS TEACHERS ARE GOVERNED BY THE ORDINARY RULES OF CONTRACT LAW, "EXCEPT WHERE EXPRESSLY RESTRICTED BY CONSTITUTION OR STATUTE. N EDWARDS V. BOARD OF EDUCATION, 169 P.2D 1015, 1017 (OKLA. 1946).
IT IS QUITE CLEAR FROM THESE AUTHORITIES THAT, WHILE A SCHOOL DISTRICT DOES HAVE THE STATUTORY AUTHORITY TO ENTER INTO EMPLOYMENT CONTRACTS WITH TEACHERS AND TO PROVIDE THEREIN FOR THE COMPENSATION TO BE PAID, IT CAN DO 50 ONLY WITHIN SUCH LIMITATIONS AS MAY BE IMPOSED BY LAW. SEE A.G. OPIN. NO. 76-384. IN OTHER WORDS, IN EXERCISING ITS STATUTORY AUTHORITY IN CONTRACTING WITH TEACHERS AND SETTING THEIR SALARY LEVELS, THE LOCAL BOARD OF EDUCATION IS REQUIRED TO FOLLOW THE MANDATES OF STATUTE. A.G. OPIN. NO. 87-080. IT IS BOUND BY THE PARAMETERS OF STATUTE. AS TO TEACHER SALARIES AND MINIMUM SALARY LEVELS, THE LEGISLATURE, THROUGH THE ENACTMENT OF SECTION 79, HAS SET JUST SUCH A PARAMETER THAT SCHOOL DISTRICTS ARE BOUND TO COMPLY WITH WHEN CONTRACTING WITH TEACHERS AND SETTING THEIR COMPENSATION LEVELS. SIMPLY PUT, A SCHOOL DISTRICT CANNOT SET A COMPENSATION LEVEL FOR A TEACHER COVERED BY SECTION 79 THAT IS LOWER THAN THAT PROVIDED FOR IN THAT SECTION.
IT MUST ALSO BE REMEMBERED THAT A STATUTE SHOULD BE GIVEN A CONSTRUCTION "ACCORDING TO THE FAIR IMPORT OF ITS WORDS TAKEN IN THEIR USUAL SENSE, IN CONNECTION WITH THE CONTEXT, AND WITH REFERENCE TO THE PURPOSE OF THE PROVISION. N JORDAN V. STATE, 763 P.2D 130, 131 (OKLA. CR. 1988). LIKEWISE, THE TERM "SHALL NOT" WHEN USED IN A STATUTE, IS A MANDATORY PROHIBITION. ID. AT 131. A FAIR READING OF SECTION 79 CLEARLY INDICATES A LEGISLATIVE PURPOSE THAT TEACHER SALARY LEVELS FOR THE 1991-92 SCHOOL YEAR NOT BE REDUCED BELOW 1990-91 SALARY LEVELS, ABSENT SPECIAL CIRCUMSTANCES. ALSO, THE LEGISLATURE'S USE OF THE WORDS "SHALL NOT" MUST BE TAKEN IN THE MOST MANDATORY SENSE. THE ONLY REASONABLE CONSTRUCTION OF SECTION 79 RESULTS IN THE CONCLUSION THAT SCHOOL DISTRICTS MUST FOLLOW ITS MANDATES WHEN SETTING THE SALARY LEVELS FOR THEIR TEACHERS FOR THE 1991-92 SCHOOL YEAR.
A LINE OF OLDER OKLAHOMA CASES STANDS FOR THE PRINCIPLE THAT RIGHTS GIVEN TO A PARTY BY STATUTES IN EFFECT AT THE TIME OF CONTRACTING ARE MADE PART OF THE CONTRACT AND CANNOT BE CONTRACTED AWAY. SEE, E.G., OKLAHOMA COTTON GROWERS ASS'N V. SALYER, 243 P. 232 (OKLA. 1925); CUNNINGHAM V. OKLAHOMA WHEAT GROWERS' ASS'N, 250 P. 71
(OKLA. 1926). A MORE RECENT CASE, MINDEMANN V. IND. SCHOOL DIST. NO. 6 OF CADDO COUNTY, 771 P.2D 996 (OKLA. 1989), RESULTED IN THE HOLDING THAT NOTWITHSTANDING A SCHOOL BOARD'S STATUTORY AUTHORITY TO CONTRACT AND COLLECTIVELY BARGAIN WITH ITS TEACHERS, IT STILL COULD NOT PUT TERMS IN ITS COLLECTIVE BARGAINING AGREEMENT IN CONTRAVENTION OF STATUTE.
THE ATTORNEY GENERAL HAS BEEN ASKED ON MANY PREVIOUS OCCASIONS TO CONSTRUE, IN A VARIETY OF CONTEXTS, MINIMUM SALARY SCHEDULES FOR TEACHERS ENACTED BY THE LEGISLATURE. SEE A.G. OPIN. NOS. 80-137, 80-224 AND 79-338. IN A.G. OPIN. NO. 80-137, THE ATTORNEY GENERAL OPINED THAT OKLAHOMA SCHOOL LAW REQUIRES THAT TEACHERS IN PUBLIC SCHOOLS OF THE STATE OF OKLAHOMA SHALL RECEIVE SALARY AND/OR FRINGE BENEFITS IN AN AMOUNT NOT LESS THAN SPECIFICALLY PROVIDED BY STATUTE. SIMILARLY, IN A.G. OPIN. NO. 80-224, THE ATTORNEY GENERAL STATED THAT MANDATED SALARY INCREASES ARE CONTROLLING IN THOSE SCHOOL DISTRICTS PAYING AT OR UNDER MINIMUM SALARY LEVELS. OF COURSE, THERE IS NOTHING UNLAWFUL IN A LOCAL SCHOOL BOARD OF EDUCATION, BY UNILATERAL ACTION OR AS THE RESULT OF COLLECTIVE BARGAINING, ENTERING INTO A CONTRACT WITH A TEACHER ESTABLISHING THE COMPENSATION OF THE TEACHER AT A LEVEL ABOVE THE STATE MINIMUM SALARY SCHEDULE. A.G. OPIN. NO. 79-338. HOWEVER, A TEACHER MUST RECEIVE THE MINIMUM SALARIES PROVIDED BY STATUTE, INCLUDING THE PROVISIONS OF SECTION 79.
(WILLIAM D. LAFORTUNE)